01

02

03

04                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
05                             AT SEATTLE

06 TIFFANY CORLISS,                    )    CASE NO. C07-0541-RSL
                                       )
07          Plaintiff,                 )
                                       )
08      v.                             )    REPORT AND RECOMMENDATION
                                       )    RE: SOCIAL SECURITY
09 MICHAEL J. ASTRUE,                  )    DISABILITY APPEAL
   Commissioner of Social Security,    )
10                                     )
            Defendant.                 )
11 _____ )

12          Plaintiff Tiffany Corliss proceeds through counsel in her appeal of a final decision of the

13 Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

14 plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income (SSI)

15 benefits after a hearing before an Administrative Law Judge (ALJ).  Having considered the ALJ's

16 decision, the administrative record (AR), and all memoranda of record, it is recommended that this

17 matter be REMANDED for further administrative proceedings.

18                        **FACTS AND PROCEDURAL HISTORY**

19          Plaintiff was born on XXXX, 1969.[1]  She has a high school equivalency diploma (GED)

20 _____

21          [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
   General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the
22 official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01  and previously worked as a telemarketer, dietary aide, and nursing assistant.

02       Plaintiff protectively filed her DI and SSI applications in March 2004.  (AR 60-63, 175-

03  78.)  With an amended disability onset date of January 9, 2004, plaintiff alleged disability due to

04  prior traumatic injury to her right foot, deafness in her right ear, visual limitation in her right eye,

05  and short term memory loss (AR 79).  Her application was denied at the initial level and on

06  reconsideration, and she timely requested a hearing.

07       On February 9, 2006, an ALJ held a hearing, taking testimony from plaintiff and vocational

08  expert Susan Stewart.  (AR 192-224.)  On September 7, 2006, ALJ M.J. Adams issued a decision

09  finding plaintiff not disabled.  (AR 14-18.)

10       Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on

11  March 5, 2007, making the ALJ's decision the final decision of the Commissioner.  (AR 6-9.)

12  Plaintiff appealed this final decision of the Commissioner to this Court.

13                                      **JURISDICTION**

14       The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

15                                       **DISCUSSION**

16       The Commissioner follows a five-step sequential evaluation process for determining

17  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

18  be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

19  engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

20  determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's

21  osteoarthritis status post crush injury to right foot, depression, and post-traumatic stress disorder

22  severe.  The ALJ did not find plaintiff's hearing loss, poor memory, seizures, or poor right eye

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  vision severe.  Step three asks whether a claimant's impairments meet or equal a listed impairment.

02  The ALJ found that plaintiff's impairments did not meet or equal the criteria for any listed

03  impairment.

04        If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

05  residual functional capacity (RFC) and determine at step four whether the claimant has

06  demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to lift ten

07  pounds occasionally with occasional standing and walking consistent with a full range of sedentary

08  exertional activity; able to perform unskilled to semi-skilled tasks; and able to respond

09  appropriately to supervision, co-workers, and usual work settings and able to deal with changes

10  in a routine work setting.  The ALJ determined that plaintiff was able to perform her past relevant

11  work as a telemarketer.  If a claimant demonstrates an inability to perform past relevant work, the

12  burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity

13  to make an adjustment to work that exists in significant levels in the national economy.  Finding

14  plaintiff not disabled at step four, the ALJ did not proceed to step five.

15        This Court's review of the ALJ's decision is limited to whether the decision is in

16  accordance with the law and the findings supported by substantial evidence in the record as a

17  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

18  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

19  mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750

20  (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

21  decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

22  2002).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01    Plaintiff argues that the ALJ erred in assessing the medical record, her testimony, and her

02    seizure disorder, and erred in determining her RFC and finding her capable of performing her past

03    relevant work.   She requests remand for an award of benefits or, alternatively, for further

04    administrative proceedings.   The Commissioner argues that the ALJ's decision is supported by

05    substantial evidence and should be affirmed.   Plaintiff did not submit a reply.

06                                            Medical Evidence

07    A determination of disability requires consideration of the medical opinions in the record.

08    20 C.F.R. §§ 404.1527 and 416.927.   *See also* Social Security Ruling (SSR) 96-5p ("The

09    adjudicator is required to evaluate all evidence in the case record that may have a bearing on the

10    determination or decision of disability, including opinions from medical sources about issues

11    reserved to the Commissioner.")   In general, more weight should be given to the opinion of a

12    treating physician than to a non-treating physician, and more weight to the opinion of an

13    examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th

14    Cir. 1996).   An ALJ may reject contradicted opinions of treating or examining physicians with

15    "'clear and convincing reasons'" and uncontradicted opinions with "'specific and legitimate

16    reasons' supported by substantial evidence in the record for so doing."   *Id*. at 830-31 (quoted

17    sources omitted).   "'The ALJ can meet this burden by setting out a detailed and thorough

18    summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

19    making findings.'" *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408

20    (9th Cir. 1986)). Also, the Commissioner must consider the opinions of state agency medical and

21    psychological consultants as opinions of nonexamining physicians and psychologists.   SSR 96-6p

22    ("[While not bound by them, ALJs and the Appeals Council]  may not ignore these opinions and

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  must explain the weight given to the opinions in their decisions.")

02      "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of

03  a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*,

04  81 F.3d at 834 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,

05  plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

06  1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,

07  the evidence supports a finding of disability. *See, e.g.*, *Schneider v. Commissioner of Social Sec.*

08  *Admin.,* 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given

09  the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]

10  functional limitations is sufficient to meet or equal [a listing.]"); *Smolen v. Chater*, 80 F.3d

11  1273,1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony,

12  physicians' opinions, and lay testimony legally insufficient; finding record fully developed and

13  disability finding clearly required).

14      However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.*

15  *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

16  were insufficient findings as to whether plaintiff's testimony should be credited as true).  As stated

17  by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon

18  an undeserving, able claimant." *Barbato v. Commissioner of Soc. Sec. Admin.*, 923 F. Supp.

19  1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith

20  error, in that some of his stated reasons for rejecting a physician's opinion were legally

21  insufficient).

22      Plaintiff notes that the ALJ in this case did not indicate the physicians' opinions she relied

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01 on in rendering her decision.  She asserts error with respect to nonexamining State agency

02 physicians Drs. Paul Rethinger and Frank Lahman and examining physician Dr. Ryan Scott.

03        The ALJ indicated that she "considered opinion evidence in accordance with the

04 requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-20, 96-5p and 96-6p[,]" but did not

05 describe her assessment of or assign any weight to the various opinions.  (AR 17A.)  She did,

06 however, discuss findings and opinions from Dr. Scott and examining physician Dr. Sam

07 Bartholomew.  (AR 16-17A.)  She did not mention Drs. Rethinger and Lahman.

08 A.     <u>Dr. Paul Rethinger and Dr. Frank Lahman</u>

09        Plaintiff first notes that Drs. Rethinger and Lahman, on a Mental RFC Assessment

10 (MRFCA) form, found her moderately limited in her ability to understand, remember, and carry

11 out detailed instructions, to interact appropriately with the general public, and to set realistic goals

12 or make plans independently of others.  (AR 149-50.)  Plaintiff avers that the ALJ's conclusion

13 that she could perform up to semi-skilled tasks is in contradiction to the assessed limitation

14 involving detailed instructions.

15        Plaintiff further notes that the semi-skilled telemarketer position identified at step four

16 requires a Specific Vocational Preparation (SVP) of 3, *see* Dictionary of Occupational Titles

17 (DOT) 299.357-014, which she maintains is inconsistent with her abilities as assessed by the State

18 agency physicians.  Plaintiff argues that the ALJ relied on no medical authority in determining that

19 she could perform work as a telemarketer and, instead, stated that plaintiff "has admitted that she

20 has worked successfully as a telemarketer since her accident."  (AR 17A.)  Plaintiff asserts error

21 in the ALJ's rejection, without evaluation, of her testimony that she ceased such work due to

22 several seizures causing her to go to the hospital, low blood pressure which caused her to go down

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01 a flight of stairs, and that she "couldn't handle it."  (AR 201.)

02 Plaintiff next asserts that Drs. Rethinger and Lahman opined that she should not work with

03 the general public. (*See* AR 151.)  She notes that the ALJ made no finding regarding her problems

04 with public interaction and, by omission, rejected the assessed limitation.  Plaintiff asserts that the

05 position of telemarketer involves constant interaction with the public.  *See* DOT 299.357-014

06 ("Solicits orders for merchandise or services over telephone: Calls prospective customers to

07 explain type of service or merchandise offered. Quotes prices and tries to persuade customer to

08 buy, using prepared sales talk.")

09 Plaintiff maintains that the ALJ should have adopted the above-described limitations

10 assessed by Drs. Rethinger and Lahman.  She argues that, given the failure to provide any reasons

11 to reject their assessments, the opinions of these physicians should be credited as a matter of law.

12 The Commissioner objects to plaintiff's reliance on the MRFCA form checkboxes,

13 "Section I", and asserts that the ALJ's RFC assessment is appropriately consistent with the

14 narrative portion of the form, "Section III".  *See* Program Operations Manual System (POMS) DI

15 25020.010 at B.1 ("The purpose of section I . . . on the [MRFCA] is chiefly to have a worksheet

16 to ensure that the psychiatrist or psychologist has considered each of these pertinent mental

17 activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over

18 a normal workday and workweek on an ongoing, appropriate, and independent basis. It is the

19 narrative written by the psychiatrist or psychologist in section III . . .  of [the MRFCA] that

20 adjudicators are to use as the assessment of RFC.") Drs. Rethinger and Lahman stated in the

21 narrative portion of the form:

22 Clt is capable of understanding, remembering & carrying out short & simple

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01        instructions, is able to attend & concentrate for 2 hrs at a time, sustain ordinary
02        routines w/o special supervision, would work best in environments where she did not
         have to interact w/the general public, is capable of interactions w/coworkers & could
03       use help in setting goals & making plans.  Clt is not otherwise significantly limited.

04 (AR 151.)  The Commissioner asserts that these findings are not inconsistent with the ALJ's RFC.

05 (*See* AR 17-17A.)

06      The Commissioner further argues that, in any event, there is no conflict between the

07 assessed moderate limitation in the ability to carry out detailed instructions and the ALJ's

08 determination that plaintiff can perform unskilled to semi-skilled tasks.  *See* 20 CFR §§

09 404.1568(a), (b) and 416.968(a), (b) ("Unskilled work is work which needs little or no judgment

10 to do simple duties that can be learned on the job in a short period of time. . . . [A] person can

11 usually learn to do the job in 30 days, and little specific vocational preparation and judgment are

12 needed."; "Semi-skilled work is work which needs some skills but does not require doing the more

13 complex work duties.")  He asserts that the ALJ's conclusion is consistent with both the State

14 agency physicians' opinions and plaintiff's work history.  (*See* AR 151 (Drs. Rethinger and Latham

15 stated: "Clt's statement of inability to perform work activities due to her memory problems is

16 given partial credibility as testing has shown her to be able to learn & recall new info, [as well as]

17 ability to perform [activities of daily living] . . . .  Clt has worked for sig periods of time earning

18 over SGA, i.e. per clt's rpt at CE, 2 yrs as car detailer, 10 mos as a waitress, & telemarketer on/off

19 for 2 yrs."))

20      The Commissioner also rejects the suggestion that the State agency physicians assessed

21 an absolute limitation on work with the general public, noting they assessed plaintiff as moderately

22 limited in the checkbox portion of the form and opined later they she "would work best in

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01  environments where she did not have to interact w/the general public, is capable of interactions

02  w/coworkers[.]" (AR 151.) The Commissioner notes plaintiff's report to Dr. Scott "that she got

03  along okay with supervisors, coworkers, and the general public[]" and "that she can work 'just

04  fine' if," *inter alia*, she was not in the presence of "a number of distracting factors such as working

05  in a restaurant, where there are 'too many voices.'" (AR 137.)  Plaintiff also reported to Dr. Scott

06  that she "was highly successful" in her telemarketing job prior to being fired for associating with

07  a whistleblower.  (*Id.*)  The Commissioner also avers, without any explanation, that a review of

08  the telemarketer job requirements reveals that while an ability to persuade is significant, "only a

09  markedly low aptitude or ability in dealing with people is required."  (Dkt. 15 at 17.)

10      The Commissioner maintains that the ALJ's assessment was sufficient.  He further avers

11  that, even if the Court found the analysis insufficient, any error was harmless to the ultimate

12  conclusion.  He asserts that plaintiff offers no argument as to how any alleged error was harmful.

13      It seems entirely reasonable for the ALJ to have found plaintiff capable of performing her

14  past relevant work based on, among other things, her own admissions concerning that work.  The

15  ALJ gave this as one of several reasons for finding plaintiff not entirely credible.  (*See* AR 17A.)

16  As discussed below, plaintiff fails to demonstrate error in the ALJ's credibility assessment.  It

17  should also be noted that, in addition to the reasons outlined by plaintiff above, she also testified

18  that she left her telemarketing job because the company was "going under[.]" (AR 201.)[2]

---

[2] Nor is plaintiff's SVP argument persuasive.  SVP levels are "defined as the amount of lapsed time required by a typical worker" to become trained to perform adequately in a specific position.  DOT, App. C.  An SVP of 1 requires only a short demonstration; an SVP of 2 requires anything beyond a short demonstration up to a month; and an SVP of 3 requires over one month up to and including three months.  *Id.*  "Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01    However, it remains that the ALJ failed to even mention the opinions of Drs. Rethinger

02 and Lahman in the decision.  As reflected above, SSR 96-6p specifically holds that an ALJ may

03 not ignore the opinions of state agency physicians and "must explain the weight given to the

04 opinions in their decisions."  The Commissioner correctly notes that the focus should be on the

05 narrative portion of their MRFCA form, rather than the checkbox findings.  *See* POMS DI

06 25020.010 at B.1.[3]  Taking that narrative portion, it is questionable whether the ALJ's RFC

07 assessment – finding her capable of performing unskilled to semi-skilled tasks, able to respond

08 appropriately to supervisors, co-workers, and usual work situations, and able to deal with changes

09 in a routine work setting (AR 17) – can be deemed wholly consistent with the opinions of the

10 State agency physicians, which included, *inter alia*, an assessed ability to understand, remember,

11 and carry out short and simple instructions, to concentrate for two hours at a time, and the opinion

12 that she "would work best in environments where she did not have to interact w/the general public

13 . . . & could use help in setting goals & making plans."  (AR 151.)  "We require the ALJ to build

14 an accurate and logical bridge from the evidence to her conclusions so that we may afford the

15 claimant meaningful review of the SSA's ultimate findings."  *Blakes v. Barnhart*, 331 F.3d 565,

16 569 (7th Cir. 2003).  In this case, the ALJ failed to build such a bridge in relation to the opinions

17 of the State agency physicians.

18    The ALJ's failure to discuss the findings of Drs. Rethinger and Lahman requires remand.

19 _____

20 of 3-4[.]" SSR 00-4p. In this case, given plaintiff's past performance of telemarketing work, it
   would not appear that the SVP of 3 poses any difficulty.  *See*, *e.g.*, SSR 00-4p ("Skills are

21 acquired in PRW[.]")

22    [3] Although the POMS "does not have the force of law" it "is persuasive authority." *Warre
   v. Commissioner of the Soc. Sec. Admin*., 439 F.3d 1001, 1005 (9th Cir. 2006).

01  Because the evidence does not support an award of benefits, however, the opinions of these

02  physicians should not be credited as true.  Nor is it clear that they could properly be credited as

03  true given their status as non-examining physicians. *See*, *e.g.*, *Lester*, 81 F.3d at 834 ("Where the

04  Commissioner fails to provide adequate reasons for rejecting the opinion of a *treating or*

05  *examining physician*, [the Court credits] that opinion as 'a matter of law.'") (emphasis added).

06  Instead, the ALJ should be directed to consider and assess the opinions of Drs. Rethinger and

07  Lahman on remand.  There are also two Physical RFC Assessment forms in the record from non-

08  examining physicians, neither of which are mentioned by the ALJ.  (AR 143-48, 167-74.)  She

09  should specifically address those forms on remand as well.

10  B.     Dr. Ryan Scott

11          Plaintiff also asserts error in the consideration of the opinions of examining psychologist

12  Dr. Scott.  She notes that Dr. Scott assessed a Global Assessment of Functioning (GAF) of 40 and

13  that the ALJ failed to evaluate that score. (AR 142.) "A GAF of forty indicates some impairment

14  in reality testing or communication, or major impairment in several areas such as work or school,

15  family relations, judgment, thinking, or mood." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 n.3 (9th

16  Cir. 2005) (cited source omitted).  Plaintiff also notes that Dr. Scott "strongly recommended that

17  [plaintiff] go through a full neuropsychological evaluation to fully understand the extent of brain

18  damage, memory shortcomings, and any other neurological impairment." (AR 142.) (*See also*

19  AR 140 (noting that it was inappropriate to use the Wechsler intelligence test as the sole

20  instrument to assess brain damage: "A full neuropsychological evaluation is critical to determine

21  the extent of . . . brain damage.")) She maintains that the ALJ failed in his duty to fully and fairly

22  develop the record on this issue.

01      The Commissioner contends that the ALJ properly endorsed the opinion of Dr. Scott, who

02  observed that plaintiff was able to learn new information based on the results of mental status

03  testing.  (*See* AR 17 A ("She has some significant differences between verbal and performance

04  scores on the WAIS-III, but Dr. Scott noted that she is able to learn new information and while

05  he indicated that she may do better at less complex work tasks, she has been quite successful

06  working in the past as a telemarketer by her own report.")) He asserts that the ALJ's findings were

07  consistent with Dr. Scott's conclusions.  (*See* AR 137-42.)  The Commissioner distinguishes GAF

08  scores from disability findings (*see* Dkt. 15 at 9-10), and notes both plaintiff's own comments to

09  Dr. Scott regarding her past successful employment and the conclusion of Dr. Rethinger that a

10  "GAF of 40 [is] not supported by testing, interview or [activities of daily living]." (AR 165.)

11      The Commissioner also disputes the need for further development of the record as to the

12  issue of brain damage.  He avers that the ALJ correctly determined that the absence of medical

13  records as to brain damage supported a step two finding plaintiff had no such medically

14  determinable impairment.  (*See* AR 17.)  The Commissioner notes that the "ALJ's duty to develop

15  the record further is triggered only when there is ambiguous evidence or when the record is

16  inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453,

17  459-60 (9th Cir. 2001).  He maintains that, in this case, there was no such ambiguity given that

18  plaintiff's alleged brain damage was uncorroborated by any competent medical evidence.

19      The ALJ did discuss some of Dr. Scott's findings and, as asserted by the ALJ, appeared

20  to endorse at least the portion of Dr. Scott's opinion as to plaintiff's ability to take in new

21  information.  (AR 16-17A.)  However, the ALJ's discussion was not sufficient.  As noted by

22  plaintiff, the ALJ did not mention, *inter alia*, the assessed GAF score or Dr. Scott's statements

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01  regarding the need for neurological testing.  While evidence in the record provided a basis for

02  rejecting the GAF score (*see* AR 151, 165), the ALJ did not rely on that evidence or even mention

03  the score.  Also, while it is not clear that the ALJ need have further developed the issue of

04  neurological testing, he should have at least addressed the suggestion from this examining

05  physician.

06       The ALJ should be directed to consider and more thoroughly assess the opinions of Dr.

07  Scott on remand.  Again, there is no basis for crediting the opinion of this physician as true.

08  Additionally, as with Drs. Rethinger, Lahman, and Scott, the ALJ should also specifically discuss

09  and assign weight to the opinions of examining physician Dr. Bartholomew.  (AR 132-35.)

10                                   Credibility

11       Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

12  reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In

13  finding a social security claimant's testimony unreliable, an ALJ must render a credibility

14  determination with sufficiently specific findings, supported by substantial evidence.  "General

15  findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

16  evidence undermines the claimant's complaints."     *Lester*, 81 F.3d at 834.  "In weighing a

17  claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either

18  in his testimony or between his testimony and his conduct, his daily activities, his work record, and

19  testimony from physicians and third parties concerning the nature, severity, and effect of the

20  symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

21  1997).

22       Here, the ALJ concluded that plaintiff's impairments could reasonably be expected to

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01  produce the alleged symptoms, but that her statements as to the intensity, persistence, and limiting

02  effects of those symptoms was not entirely credible.  The ALJ elaborated as follows:

> While the claimant has alleged disability in part due to difficulty walking, she has
> admitted that she is able to sit.  She also continues to perform activities that require
> some standing and walking such as grocery shopping and laundry.  She does not
> require any strong pain medication or other therapy for her orthopedic impairment.
> She has some significant differences between verbal and performance scores on the
> WAIS-III, but Dr. Scott noted that she is able to learn new information and while he
> indicated that she may do better at less complex work tasks, she has been quite
> successful working in the past as a telemarketer by her own report.  There is no
> evidence in the record that the claimant has sought treatment for depression or for
> anxiety.

09  (AR 17A; internal citations to record omitted.)

10       As reflected above, plaintiff takes issue with the ALJ's assessment of her comments

11  regarding why she ceased her telemarketing work.  ( *See* AR 201.)   However, it was not

12  inappropriate for the ALJ to rely on plaintiff's prior inconsistent comments to Dr. Scott (*see* AR

13  137) and the fact of her ability to maintain employment "with a fair amount of success[.]"  *Drouin*

14  *v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).   The ALJ also provided other clear and

15  convincing reasons for not finding plaintiff entirely credible, including her conservative and

16  inconsistent treatment.  *See, e.g.*, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("The

17  ALJ also noted that Parra's physical ailments were treated with an over-the-counter pain

18  medication. We have previously indicated that evidence of 'conservative treatment' is sufficient

19  to discount a claimant's testimony regarding severity of an impairment.") (quoting  *Johnson v.*

20  *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995));  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

21  2005) ("That Burch's pain was 'not severe enough to motivate [her] to seek [these forms of]

22  treatment,' even if she sought some treatment, is powerful evidence regarding the extent to which

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01  she was in pain.") (quoting *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

02       Plaintiff fails to demonstrate any error in the ALJ's credibility assessment.  However,

03  because the reassessment of the opinions of the physicians of record will likely impact the

04  credibility assessment, the ALJ should reconsider plaintiff's credibility as needed on remand.

05                                    Seizure Disorder

06       The ALJ deemed plaintiff's seizure disorder non-severe, stating: "The claimant has not

07  been under any treatment for a seizure disorder.  While she was evaluated for complaints of a

08  possible seizure in July 2003 she admitted that she had not taken any medication for this concern

09  since 1992." (AR 17.)  The ALJ determined that this impairment, along with others deemed non-

10  severe, did not have more than a minimal impact on her ability to perform basic work functions.

11       Plaintiff asserts that the lack of treatment for her seizure disorder is irrelevant to the

12  determination of disability.  She notes that the ALJ did not ask for an explanation as to why she

13  was not receiving care for this impairment "and failed to reconcile the lack of evaluation regarding

14  the seizure disorder."  (Dkt. 12 at 14.)  She asserts that none of the State agency physicians

15  considered her seizure disorder and that the ALJ failed to obtain evidence to allow him to consider

16  how this impairment impacted her ability to work.  Plaintiff points to her testimony regarding

17  seizures, including her assertions that she experiences residual fatigue after seizures and has

18  approximately one seizure per month.  (AR 208.)  She also avers that the ALJ erred in failing to

19  consider the combined impact of her impairments.  20 C.F.R. §§ 404.1523, 416.923 ("In

20  determining whether your physical or mental impairment or impairments are of a sufficient medical

21  severity that such impairment or impairments could be the basis of eligibility under the law, we will

22  consider the combined effect of all of your impairments without regard to whether any such

01    impairment, if considered separately, would be of sufficient severity.")[4]

02        At step two, a claimant must make a threshold showing that her medically determinable

03    impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*,

04    482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities"

05    refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b),

06    416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the

07    evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's

08    ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28).

09    "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.*

10    (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect"

11    of an individual's impairments in considering severity. *Id.*

12        Beyond the July 2003 document referenced by the ALJ, there is an absence of information

13    in the record regarding a seizure disorder. It should also be noted that plaintiff declined further

14    evaluation or treatment during that 2003 emergency room visit. (AR 127-28.) Also, plaintiff's

15    own testimony on this issue is possibly contradictory. Although she stated that her seizures occur

16    once a month, she also described the "last one [she] had" as occurring during her employment with

17    West Coast Vinyl (AR 208), which would presumably correspond with her last employment – in

18

19

20    _____

21        [4] Plaintiff also asserts that the ALJ "ignored the mandate set forth in footnote of [SSR] 96-
       7p[.]" (Dkt. 12.) Although plaintiff may be referring to the third footnote in that SSR, she has not
22    described this argument with enough specificity to allow for either a response from the
       Commissioner or an evaluation by this Court.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01  2003 or 2004 (*see* AR 68, 71).[5]  Although plaintiff puts the onus on the ALJ to have acquired

02  more information regarding this condition, she bears the burden of making a threshold showing

03  that this impairment significantly limits her ability to perform basic work activities.  In this case,

04  plaintiff failed to meet that burden.  Nor does it appear that the ALJ failed to properly consider

05  the combined impact of plaintiff's impairments.  (*See* AR 17-17A.)

06          In sum, plaintiff fails to demonstrate any error with respect to her seizure disorder.

07  However, should further evaluation of the record require further assessment at step two, the ALJ

08  should reconsider this condition accordingly.   In particular, an assessment of Dr. Scott's

09  statements regarding neurological testing may impact this issue.

10                                          Other Issues

11          Given the above-described errors, plaintiff maintains error in the assessment of her RFC

12  and ability to perform her past relevant work.  Reassessment of the physicians' opinions may

13  impact both the RFC assessment and determination at step four.  Accordingly, the ALJ should

14  reconsider these issues as needed on remand.

15          The Court also takes note of another possible error not identified by either party.  The

16  record contains a functional ability report completed by plaintiff's friend Scott York.  (AR 103-

17  111.)  The ALJ does not mention this report.

18          Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

19  to work is competent evidence.  *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The

20  ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each witness.

21  _____

22          [5] This testimony is described as possibly contradictory given that plaintiff may have been
describing the last seizure she had while at work.  (*See* AR 207-08.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01  *See Smolen*, 80 F.3d at 1288-89 (finding rejection of testimony of family members because, *inter*

02  *alia*, they were "'understandably advocates, and biased'" amounted to "wholesale dismissal of the

03  testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane to

04  each individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

05  *Accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("[L]ay testimony as to a claimant's

06  symptoms is competent evidence that an ALJ must take into account, unless he or she expressly

07  determines to disregard such testimony and gives reasons germane to each witness for doing so.")

08  Moreover, as recently found by the Ninth Circuit: "[W]here the ALJ's error lies in a failure to

09  properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

10  consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully

11  crediting the testimony, could have reached a different disability determination." *Stout v.*

12  *Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

13      Here, York's report contains information regarding plaintiff's symptoms and abilities. On

14  remand, the ALJ should assess the report and, if she rejects the testimony contained therein,

15  provide germane reasons for doing so.

## CONCLUSION

16

17      For the reasons set forth above, this matter should be REMANDED for further

18  administrative proceedings.

19      DATED this 13th day of February, 2008.

20

21                                Mary Alice Theiler
                                  United States Magistrate Judge

22